# EXHIBIT "A"

# ADJUSTABLE RATE BALLOON NOTE
### (LIBOR Index - Rate Caps)

LASHLEY
Loan #: ▮▮▮▮▮▮
MIN: ▮▮▮▮▮▮

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

**THIS LOAN ALSO CONTAINS A BALLOON FEATURE. THIS LOAN IS PAYABLE IN FULL AT MATURITY. I MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. I WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT I MAY OWN, OR I MAY HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER I HAVE THIS LOAN WITH, WILLING TO LEND ME THE MONEY. IF I REFINANCE THIS LOAN AT MATURITY, I MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN IF I OBTAIN REFINANCING WITH THE SAME LENDER.**

| MARCH 14, 2007 | BERWYN | PENNSYLVANIA |
|---|---|---|
| [Date] | [City] | [State] |

4 DONNY BROOK WAY, COLLEGEVILLE, PA 19426
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $500,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **WILMINGTON FINANCE INC.**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **8.250%**. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place Of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on **MAY 1, 2007**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **APRIL 1, 2037**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **PO BOX 209, PLYMOUTH MEETING, PA 19462** or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$3,494.79**. This amount may change.

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **APRIL, 2010**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SIX AND ONE-FOURTH** percentage points (**6.250%**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to amortize the unpaid principal that I am expected to owe at the Change Date in full over the initial amortization period of **50** years at my new interest rate in substantially equal payments. However, the balloon feature of this loan requires the payment of the entire principal balance and unpaid interest due at the Maturity Date defined in Section 3(A). The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **10.250%** or less than **8.250%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **14.250%**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**MULTISTATE ADJUSTABLE RATE BALLOON NOTE - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRUMENT**

8704.13                                         Page 2 of 5                          **Modified Form 3590 10/05**

Modified by **WILMINGTON FINANCE INC.**

**5. BORROWER'S RIGHT TO PREPAY SEE 'PREPAYMENT RIDER TO NOTE' ATTACHED HERETO AND MADE A PART HEREOF.**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

    **(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D) No Waiver by Note Holder**

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

**MULTISTATE ADJUSTABLE RATE BALLOON NOTE - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRUMENT**

    8704.13                           Page 3 of 5                         **Modified Form 3590 10/05**

Modified by WILMINGTON FINANCE INC.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this Period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE BALLOON NOTE - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRUMENT

| | | |
|---|---|---|
| 8704.13 | Page 4 of 5 | **Modified Form 3590 10/05** |

Modified by WILMINGTON FINANCE INC.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ *Kelvin Alvin Wohlheg*  3/14/07

- BORROWER - KELVIN ALVIN LASHLEY - DATE -

_____ *Alice Lashley*  3/14/07

- BORROWER - ALICE LASHLEY - DATE -

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE BALLOON NOTE - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRUMENT

☜  8704.13                    Page 5 of 5                    Modified **Form 3590 10/05**

Modified by WILMINGTON FINANCE INC.

# PREPAYMENT RIDER TO NOTE

LASHLEY
Loan #: ▮▮▮▮▮▮
MIN: ▮▮▮▮▮▮▮

The Note dated **MARCH 14, 2007** between **WILMINGTON FINANCE INC.** (Lender) and **KELVIN ALVIN LASHLEY** and **ALICE LASHLEY** (Borrower or I) is hereby amended as follows:

1.     Additional Covenants. Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender covenant, and agree, that the provisions of the section of the Note entitled "BORROWER'S RIGHT TO PREPAY" or "BORROWER'S PREPAYMENTS BEFORE THEY ARE DUE" is amended to read as follows:

I have the right to make payments of principal at any time before they are due. A prepayment of the entire unpaid principal is known as a "Full Prepayment". A prepayment of only part of the unpaid principal is known as a "Partial Prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

Except as provided below, I may make a full prepayment or a partial prepayment without paying any penalty. If I make a partial prepayment equal to one or more of the monthly payments, my due date may be advanced no more than one month. If I make any other partial prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a full prepayment at any time. However, if within the first **36** months after execution of the Mortgage, I make any prepayment(s) within any 12 month period, the total amount of which exceeds ten percent (10%) of the original principal amount of this loan; I will pay a prepayment charge in an amount equal to **5.000**% of the amount prepaid in excess of 10% of the original principal balance of the Note.

This Rider will remain in full force and effect unless the Note is transferred by Lender and the Borrower is notified in writing by the new Note Holder, at its sole option, has declared the Rider null and void. If the Rider is declared null and void, the original Note terms shall remain in full force and effect.

By signing below, Borrower(s) accept(s) and agree(s) to the terms and covenants contained in this Prepayment Penalty Rider to Note.

_____     3/14/07
- BORROWER - KELVIN ALVIN LASHLEY - DATE -

_____     3/14/07
- BORROWER - ALICE LASHLEY - DATE -

9906.5                                        Page 1 of 1

### ALLONGE TO NOTE

Allonge to note dated:       3/14/2007

In Favor of :            **Wilmington Finance, Inc.**

And executed by:       **KELVIN ALVIN LASHLEY and ALICE LASHLEY**

Property Address:       4 DONNY BROOK WAY
COLLEGEVILLE, PA 19426,

Loan Amount:          $ 500,000.00

Pay to the order of :    **The CIT Group/Consumer Finance, inc.**

without recourse:        **Wilmington Finance, Inc.**

By:

Title:                Don Malabuyo
                    Designated Signer

Loan number: ██████████

Borrower: KELVIN ALVIN LASHLEY ANDALICE  LASHLEY

Note Date:  3/14/2007

# ALLONGE TO NOTE

PAY TO THE ORDER OF
**The Bank of New York Mellon
as Trustee of
CIT Mortgage Loan Trust 2007-1**

WITHOUT RECOURSE

THE CIT GROUP/CONSUMER FINANCE. INC.

_Authorized Signature_

Chris Santaniello, Vice President
CIT Group/Consumer Finance, Inc.

# ALLONGE TO NOTE

Account Number:

Allonge to Note Dated:     **03/14/2007**

And Executed by:           **KELVIN ALVIN LASHLEY AND**

                           **ALICE LASHLEY**

Property Address:          **4 DONNY BROOK WAY**
                           **COLLEGEVILLE, PA  19426**

Loan Amount:               **$500,000.00**

Pay to the order of:       _____

Without recourse:          **THE BANK OF NEW YORK MELLON, AS
                           TRUSTEE FOR CIT MORTGAGE LOAN TRUST
                           2007-1, BY VERICREST FINANCIAL, INC. AS ITS
                           ATTORNEY IN FACT**

By:                        **Roy Lacey**
Title:                     **Authorized Signatory**

# EXHIBIT "B"

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Nancy J. Becker*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869



MTG BK 12069 PG 01653 to 01671
INSTRUMENT # : 2007038823
RECORDED DATE: 03/29/2007 01:01:10 PM



MONTGOMERY COUNTY ROD

**OFFICIAL RECORDING COVER PAGE** | Page 1 of 19

| | |
|---|---|
| Document Type: Mortgage | Transaction #: |
| Document Date: 03/14/2007 | Document Page Count: |
| Reference Info: LASHLEY | Operator Id: |

| RETURN TO: (Mail) | SUBMITTED BY: |
|---|---|
| AMERICAN FREEDOM ASSURANCE INC | AMERICAN FREEDOM ASSURANCE INC |
| 1205 WESTLAKE DR STE 250 | 1205 WESTLAKE DR STE 250 |
| BERWYN, PA 19312 | BERWYN, PA 19312 |

**\* PROPERTY DATA:**
Parcel ID #:
Address:          24 DONNY BROOK WAY

                 PA
Municipality:
School District:

**\* ASSOCIATED DOCUMENT(S):**

| | |
|---|---|
| **FEES / TAXES:** | MTG BK 12069 PG 01653 to 01671 |
| Recording Fee:Mortgage          $46.50 | Recorded Date: 03/29/2007 01:01:10 PM |
| Additional Pages Fee          $28.00 | |
| Affordable Housing Pages          $28.00 | I hereby CERTIFY that |
| | this document is |
| Total:          $102.50 | recorded in the |
| | Recorder of Deeds |
| | Office in Montgomery |
| | County, Pennsylvania. |
| | |
| | Nancy J. Becker |
| | Recorder of Deeds |

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared By:   American Freedom Assurance, Inc
               1205 Westlakes Drive, Suite 250
               Berwyn, PA  19312
               (610)640-2040

Return To:     American Freedom Assurance, Inc
               1205 Westlakes Drive, Suite 250
               Berwyn, PA  19312
               (610)640-2040

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
██████████ UPPER PROVIDENCE
24 DONNY BROOK WAY
LASHLEY KELVIN A                          $5.00
B 033F  U 010  L 10  1101  DATE: 03/29/2007    BR

UPI#: ███████████████

Loan #: ██████████

Mortgagor:   Kelvin Alvin and Alice Lashley
             4 Donny Brook Way
             Collegeville, PA  19426

MAR 2 9 2007

After Recording Return To:
**WILMINGTON FINANCE, INC.**
**PO BOX 7000**
**PLYMOUTH MEETING, PA 19462**
**(877) 963-4968**

Prepared By:
**WILMINGTON FINANCE, INC.**
**WILMINGTON FINANCE INC.**
**401 PLYMOUTH ROAD, SUITE 400**
**PLYMOUTH MEETING, PA 19462**
**(877) 963-4968**

Property Address:
**4 DONNY BROOK WAY**
**COLLEGEVILLE, PA 19426**
PIN: █████████

---

[Space Above This Line For Recording Data]

# MORTGAGE

LASHLEY
Loan #: ████
PIN: ████████
MIN: ████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated **MARCH 14, 2007**, together with all Riders to this document.

(B) **"Borrower"** is **KELVIN ALVIN LASHLEY AND ALICE LASHLEY.** Husband and wife Borrower is the mortgagor under this Security Instrument.

(C) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) **"Lender"** is **WILMINGTON FINANCE INC..** Lender is a **CORPORATION** organized and existing under the laws of **DELAWARE.** Lender's address is **401 PLYMOUTH ROAD, SUITE 400, PLYMOUTH MEETING, PA 19462.**

(E) **"Note"** means the promissory note signed by Borrower and dated **MARCH 14, 2007.** The Note states that Borrower owes Lender **FIVE HUNDRED THOUSAND AND 00/100 Dollars (U.S. $500,000.00)** plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **APRIL 1, 2037.**

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges

PENNSYLVANIA-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
⊜    347.32                                    Page 1 of 13                                    Form 3039 1/01

03/29/2007 01:01:10 PM                                                                                                    MONTCO

due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider                    ☐ Second Home Rider
☐ Balloon Rider                ☐ Planned Unit Development Rider       ☐ Biweekly Payment Rider
☐ 1-4 Family Rider             ☒ Other(s) [specify] **BALLOON ARM RIDER**

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) **"Escrow Items"** means those items that are described in Section 3.
(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the COUNTY (Type of Recording Jurisdiction) of MONTGOMERY (Name of Recording Jurisdiction)
**SEE COMPLETE LEGAL DESCRIPTION DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**
which currently has the address of **4 DONNY BROOK WAY, COLLEGEVILLE**, Pennsylvania **19426** ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
347.32                            Page 2 of 13                            Form 3039 1/01

Description: Montgomery,PA Mortgages-Book.Page 12069.1653 Page: 4 of 19
Order:            Comment:

easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
347.32                                    Page 3 of 13                          Form 3039 1/01

Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

347.32                                    Page 4 of 13                                    Form 3039 1/01

Description: Montgomery,PA Mortgages-Book.Page 12069.1653 Page: 6 of 19
Order: [ ]  Comment:

attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
ᴇᴅ    347.32                                    Page 5 of 13                                    Form 3039 1/01

Description: Montgomery,PA Mortgages-Book.Page 12069.1653 Page: 7 of 19
Order:          Comment:

Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which

has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact- that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to

Description: Montgomery,PA Mortgages-Book.Page 12069.1653 Page: 9 of 19
Order:            Comment:

the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Description:  Montgomery,PA Mortgages-Book.Page 12069.1653 Page: 10 of 19
Order:            Comment:

03/29/2007 01:01:10 PM

MONTCO

for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall

Description:  Montgomery,PA Mortgages-Book.Page 12069.1653 Page: 11 of 19
Order:           Comment:

be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in

Description: Montgomery,PA Mortgages-Book.Page 12069.1653 Page: 12 of 19
Order:          Comment:

the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify**

Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____   3/14/07
- BORROWER - KELVIN ALVIN LASHLEY - DATE -

_____   3/14/07
- BORROWER - ALICE LASHLEY - DATE -

[Space Below This Line For Acknowledgment]

STATE OF Pennsylvania

COUNTY OF Montgomery

On this the 14th day of March 2007, before me,
Kimberly F Heit, the undersigned officer, personally appeared
Kelvin Alvin Lashley
Alica Lashley

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and
official seal.

Notary Public

My Commission Expires: 8/29/10

NOTARIAL SEAL
KIMBERLY F. HEIT, Notary Public
Easttown Township, Chester County
My Commission Expires August 29, 2010

CERTIFICATE OF RESIDENCE: I do hereby certify that the correct address of the within named Lender is 401 PLYMOUTH ROAD, SUITE 400, PLYMOUTH MEETING, PA 19462 witness my hand this 14TH day of MARCH, 2007.

Agent for Lender

PENNSYLVANIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
347.32                                     Page 13 of 13                          Form 3039 1/01

03/29/2007 01:01:10 PM

MONTCO

## ADJUSTABLE RATE BALLOON RIDER
### (LIBOR Index - Rate Caps)

Loan #
MIN: 

THIS ADJUSTABLE RATE BALLOON RIDER is made this **14TH** day of **MARCH, 2007**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **WILMINGTON FINANCE INC.** (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

4 DONNY BROOK WAY, COLLEGEVILLE, PA 19426
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

THIS LOAN ALSO CONTAINS A BALLOON FEATURE. THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

WILMINGTON - MODIFIED
MULTISTATE ADJUSTABLE RATE BALLOON RIDER - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRU-MENT

8706.16                    Page 1 of 3                    Modified Form 3192 10/05

Description: Montgomery,PA Mortgages-Book.Page 12069.1653 Page: 16 of 19
Order:          Comment:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 8.250%. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of APRIL, 2010, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX AND ONE-FOURTH percentage points (6.250%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to amortize the unpaid principal that I am expected to owe at the Change Date in full over the initial amortization period of 50 years at my new interest rate in substantially equal payments. However, the balloon feature of this loan requires the payment of the entire principal balance and unpaid interest due at the Maturity Date defined in Section 3(A). The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.250% or less than 8.250%. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 14.250%.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

WILMINGTON - MODIFIED
MULTISTATE ADJUSTABLE RATE BALLOON RIDER - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRU-MENT

⌐⌐    8706.16                         Page 2 of 3                         Modified Form 3192 10/05

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Kelvin A Lashley_    3/14/07
- BORROWER - KELVIN ALVIN LASHLEY - DATE -

_Alice Lashley_    3/14/07
- BORROWER - ALICE LASHLEY - DATE -

**WILMINGTON - MODIFIED**
**MULTISTATE ADJUSTABLE RATE BALLOON RIDER - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRU-**
**MENT**

⬥    8706.16                     Page 3 of 3                     **Modified Form 3192 10/05**

Legal Description

ALL THAT CERTAIN LOT OR PIECE OF GROUND, SITUATE IN UPPER PROVIDENCE
TOWNSHIP, MONTGOMERY COUNTY, PENNSYLVANIA, AND DESCRIBED ACCORDING TO A
FINAL PLAN OF DONNY BROOK ESTATES MADE BY CZOP/SPECTOR, CONSULTING
ENGINEERS AND SURVEYORS, DATED 1/10/1997 AND LAST REVISED 5/21/1998 AND
RECORDED IN MONTGOMERY COUNTY PLAN BOOK A-58 PAGE 494, AS FOLLOWS, TO WIT:

BEGINNING AT A POINT IN THE SOUTHEASTERLY SIDE OF DONNY BROOK WAY WHICH
POINT OF BEGINNING IS AT THE DISTANCE OF 31 42 FEET MEASURED ON THE ARC OF A
CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 20 00 FEET FROM A POINT ON THE
NORTHEASTERLY SIDE OF HOPWOOD ROAD, THENCE EXTENDING FROM SAID POINT OF
BEGINNING, NORTH 46 DEGREES 16 MINUTES 05 SECONDS EAST 79 73 FEET TO A POINT, A
CORNER OF LOT NO 9 AS SHOWN ON SAID PLAN, THENCE EXTENDING ALONG THE SAME,
THE THREE FOLLOWING COURSES AND DISTANCES, VIZ.

1   SOUTH 42 DEGREES 15 MINUTES 46 SECONDS EAST 78.45 FEET TO A POINT, AND
2   NORTH 72 DEGREES 15 MINUTES 46 SECONDS WEST 111.11 FEET TO A POINT, AND
3   SOUTH 42 DEGREES 15 MINUTES 46 SECONDS EAST, CROSSING THE BED OF A CERTAIN
STORM DRAINAGE EASEMENT, ALSO THE BED OF A CERTAIN LANDSCAPE BUFFER
EASEMENT (OF VARIABLE WIDTH), ALSO CROSSING THE BED OF DONNY BROOK RUN,
ALSO CROSSING THE BED OF AN EXISTING 20 FEET WIDE SANITARY SEWER EASEMENT,
184 00 FEET TO A POINT IN LINE OF LAND NOW OR LATE OF KENNETH F & VIRGINIA
MAZUK;

THENCE EXTENDING ALONG THE SAME, THE TWO FOLLOWING COURSES AND DISTANCE,
VIZ.

1   SOUTH 47 DEGREES 44 MINUTES 14 SECONDS WEST 67 05 FEET TO A POINT, AND
2   SOUTH 30 DEGREES 33 MINUTES 14 SECONDS WEST 84 59 FEET TO A POINT ON THE
NORTHEASTERLY SIDE OF DONNY BROOK WAY,

THENCE EXTENDING ALONG THE SAME, NORTH 43 DEGREES 43 MINUTES 55 SECONDS
WEST 337 89 FEET TO A POINT PF RADIAL ROUND CURVE THEREON; THENCE EXTENDING
ON THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 20 00 FEET THE
ARC DISTANCE OF 31 42 FEET TO THE FIRST MENTIONED POINT AND PLACE OF
BEGINNING.

BEING LOT NO. 10 AS SHOWN ON SAID PLAN

# EXHIBIT "C"

This document was prepared by: Caliber Home Loans Inc.

## LOAN MODIFICATION AGREEMENT - LIMITED TERM INTEREST ONLY

**To the Borrower: This Agreement contains changes in terms which affect your Loan secured by the Property identified below. This is a legal obligation and you should read and understand the terms of this Agreement before you sign it.**

**This Agreement (the "Agreement") is dated as of December 21, 2016, but effective as of the Modification Effective Date defined herein, by and between KELVIN ALVIN LASHLEY and ALICE LASHLEY (collectively, the "Borrower" or "you") and Caliber Home Loans, Inc. (the "Servicer"), on behalf of the current owner of your loan (the "Lender").**

**RECITALS:**

A.  Borrower has a mortgage loan, account number ▮▮▮▮▮ (the "Loan"). This loan is secured by property commonly referred to as 4 DONNY BROOK WAY, COLLEGEVILLE, PA 19426 (the "Property").

B.  Borrower signed the following documents in connection with the Loan:

   - Note dated March 14, 2007 in the original amount of $500,000.00 (the "Note").

   - Mortgage, Security Deed, or Deed of Trust on the Property, recorded in real property records of Montgomery County, PA (the "Security Instrument"), with an original stated maturity date of April 1, 2037.

   - The Note and the Security Instrument, together with all documents executed in relation to the Note and the Security Instrument, and in addition to any loan modification previously entered into by Borrower, are called the "Loan Documents".

C.  Borrower has provided information to Servicer, and Borrower and Servicer want to modify the terms of the Note and Security Instrument.

In consideration of the foregoing Recitals and the terms, conditions, representations and warranties, and mutual covenants and agreements herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower and Servicer (collectively, the "Parties"), mutually agree as follows:

1.  **Conditions to Effectiveness of Agreement.**

   a.  This Agreement will only be effective after Borrower signs and returns a signed original of this Agreement to Servicer on or before January 5, 2017.

   b.  Borrower makes payments as set forth in this Agreement.

**2.**    **Modification of the Loan Documents**

If the conditions of this Agreement are satisfied, then your Loan is modified as follows:

Modification Period: This modification will take effect on January 1, 2017 (the "Modification Effective Date"). The first modified payment under this Agreement will be due on February 1, 2017 and the last modified payment will be due on January 1, 2022.

Modified Principal Balance: On the Modification Effective Date, the unpaid principal balance payable under the Note is $476,548.13 (the "Unpaid Principal Balance").

Modified Monthly Payment Amount: You promise to make modified monthly INTEREST-ONLY payments in an amount set forth in the table below for a 60 month period beginning with the first interest-only payment due on February 1, 2017 and ending with the last interest-only payment due on January 1, 2022 (the "Interest-Only Period"). During the 60 month Interest-Only Period, the total modified monthly payment amount will include monthly interest-only payments and may include any monthly escrow payments (to the extent Servicer will pay escrowed amounts) and monthly payments for Ancillary Amounts, as identified below.

At the end of the Interest-Only Period, Borrower promises to make monthly post-modification PRINCIPAL-AND-INTEREST payments beginning with the first payment due after January 1, 2022 and ending on the Maturity Date (the "Principal-and-Interest Period"). During the Principal-and-Interest Period, the total post-modification monthly payment amount will include monthly principal-and-interest payments and may include any monthly escrow payments (to the extent Servicer will pay escrowed amounts).

Interest Rate: Interest will be charged on the Unpaid Principal Balance beginning on the Modification Effective Date at a rate of 1.250%. Monthly interest-only payments during that period will be based on this modified rate. During the Post-Modification Period, interest will be accrued on the Unpaid Principal Balance at the rate set forth in the Loan Documents. Monthly principal-and-interest payments will be based on such rate set forth in the Loan Documents. If the Loan has an adjustable rate feature, the interest rate under the Note may be higher at the end of the Interest-Only Period than it was at the beginning of the Interest-Only Period, causing the monthly principal-and-interest payments to be higher.

Deferred Amounts: We have agreed to defer your obligation to pay the following amounts (the "Deferred Amounts"):

Deferred Principal: $0.00

Deferred Amounts Other Than Principal: $114,818.76

Deferred Amounts do not accrue interest. The Deferred Amounts will be due at the earlier of payment in full of the Note, or the Maturity Date. If you sell the Property or refinance the Loan, you will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts are due on the Maturity Date and are required to be paid at or before that time. This means that if you make all the payments required by this Agreement, you will still owe the Deferred Amount to Servicer. The Deferred Amount may result in a significantly higher monthly payment on the Maturity Date.

Summary of Modified Payments During Interest Only Period:

---



| | |
|---|---|
| Unpaid Principal Balance: | $476,548.13 |
| Interest Rate: | 1.25% |
| Monthly Interest Only Payment: | $496.40 |
| Monthly Escrow Payment (Taxes and Insurance)*: | $2,304.61 |
| Total Modified Monthly Payment: | $2,801.01 |
| Uncollected Fees**: | $3,338.00 |
| First Modification Payment Date: | February 1, 2017 |

*Your Monthly Escrow Payment is an amount calculated in accordance with the Loan Documents, and Federal and State law. This amount may change from time to time if escrow items (taxes and insurance) increase or decrease.

** Uncollected Fees include $3,338.00 in fees and/or charges other than Ancillary Amounts that have been assessed to your account. Uncollected Fees DO NOT ACCRUE INTEREST, but will remain on your account following the processing of your loan modification. PAYMENT IS NOT REQUIRED UNTIL THE MATURITY DATE OF THE LOAN OR THE DATE YOU PAY OFF THE LOAN. Payment of these amounts before either of those dates is up to you, and nonpayment will not affect the status of your account.

3. **Events of Default.** A default under the terms of this Agreement constitutes a default under the terms of the Loan Documents. All the rights and remedies, stipulations, and conditions contained in the Loan Documents relating to default in the making of payments under the Loan Documents shall also apply to default in the making of the modified payments hereunder.

4. **Additional Covenants and Agreements.**

The Parties further agree to and acknowledge each of the following:

A. All persons who signed the Loan Documents must sign this Agreement in person or by an authorized representative, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) Servicer has waived this requirement in writing. Borrower, by signing this Agreement, will be presumed to have read this Agreement and understand the terms of this Agreement.

B. Borrower certifies that all documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct, and Borrower agrees to be bound by the representations in the Loss Mitigation Application.

C. This Agreement supersedes the terms of any modification, forbearance, trial period plan or other workout plan that Borrower may have or have had in the past with Servicer or any prior servicer.

D. Except as specifically modified by this Agreement, the terms of the Loan Documents remain in full force and effect and are duly valid, binding agreements, enforceable in accordance with their terms. This Agreement does not replace or release any terms in the Loan Documents, except

LOAN MODIFICATION AGREEMENT - FIVE YEAR LIMITED TERM INTEREST ONLY



Revised 06/15

Page 3 of 5

as specifically modified by this Agreement. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents.

E.    Borrower may not assign and no person may assume Borrower's rights under this Agreement or the Loan Documents without the prior written consent of the Servicer.

F.    If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

      If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

G.    If Servicer makes advances for payment of taxes or insurance, accrues interest, or posts late or other fees or expenses to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the First Modification Payment Date, then these amounts will either become Deferred Amounts under the Loan Documents, or will be offset with a portion of Good Faith funds, if applicable. Any addition of Deferred Amounts or offset of advances pursuant to this section will be reflected on Borrower's periodic statement.

H.    Borrower will execute such other documents or papers as may be reasonably necessary or required to either (i) consummate the terms and conditions of this Agreement, or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. Borrower understands that either a corrected Agreement or a letter agreement containing the correction will be provided to Borrower for Borrower's signature. At the option of the Lender, if Borrower elects not to sign any such corrective documentation, the terms of the operative Loan Documents will continue in full force and effect, and such terms will not be modified by this Agreement.

I.    This Agreement constitutes notice that any waiver by Servicer as to payment of taxes, insurance and other escrow items has been revoked. Borrower agrees and understands that Borrower will be required to pay certain escrow amounts as required by Servicer in accordance with applicable Federal and state law.

## 5.    No Waiver.

Except as specifically provided herein, the Security Instrument shall remain unaltered and in full force and effect and is hereby ratified and confirmed by the Parties hereto. This Agreement shall not constitute a novation of the Security Instrument. The execution, delivery and effectiveness of this Agreement shall not,

except as expressly provided herein, operate as a waiver of any right, power or remedy of any party under the Security Instrument.

**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect debt but is sent for informational purposes only.**

Whereof, Servicer and Borrower have executed this Modification Agreement as of the dates indicated below

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement:

**IMPORTANT INFORMATION**

**YOUR SIGNATURE BELOW CONFIRMS:**

**(1) YOUR UNDERSTANDING OF THE TERMS OF THIS MODIFICATION AND THAT YOUR PAYMENT MAY INCREASE GREATLY AT THE END OF YOUR 60 MONTH MODIFICATION TERM;**

**(2) THAT YOU HAVE REQUESTED THIS MODIFICATION IN ORDER TO KEEP OWNERSHIP OF YOUR HOME; AND**

**(3) THAT IF YOUR PAYMENT INCREASES AT THE END OF YOUR MODIFICATION TERM, YOU BELIEVE YOU WILL BE ABLE TO MAKE THE GREATER PAYMENT AMOUNT.**

**Borrower**

_____ 1/9/17        _____ 1/9/17
**KELVIN ALVIN LASHLEY**      Date        **ALICE LASHLEY**         Date

_____                _____
*Witness*                              *Witness*

**Lender**

**Caliber Home Loans, Inc.**

_____ 1-17-17
                        Date

Account Number: ▮▮▮▮▮▮

# EXHIBIT "D"

 

**RECORDER OF DEEDS**
MONTGOMERY COUNTY
*Nancy J. Becker*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MTG BK 13851 PG 01168 to 01171**
INSTRUMENT # : 2014070454
RECORDED DATE: 10/21/2014 08:45:03 AM



**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 4 |
|---|---|

| | | |
|---|---|---|
| **Document Type:** Mortgage Assignment | **Transaction #:** | |
| **Document Date:** 07/21/2014 | **Document Page Count:** | |
| **Reference Info:** | **Operator Id:** | |
| **RETURN TO: (**Simplifile) | **PAID BY:** | |
| First American Mortgage Services - FCL Segment | FIRST AMERICAN MORTGAGE SERVICES - FCL | |
| 3 First American Way | SEGMENT | |
| Santa Ana, CA 92707 | | |

**\* PROPERTY DATA:**
Parcel ID #:
Address:          4 DONNY BROOK WAY

                 PA
Municipality:    Upper Providence Township
                 (100%)
School District: Spring-Ford Area

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12069 PG 01672

| **CONSIDERATION/SECURED AMT:** 0.00 | MTG BK 13851 PG 01168 to 01171 |
|---|---|
| | Recorded Date: 10/21/2014 08:45:03 AM |
| **FEES / TAXES:** | |
| Recording Fee:Mortgage Assignment    $76.00 | I hereby CERTIFY that |
| Additional Names Fee                 $0.50 | this document is |
| **Total:**                           $76.50 | recorded in the |
| | Recorder of Deeds |
| | Office in Montgomery |
| | County, Pennsylvania. |



**Nancy J. Becker**
**Recorder of Deeds**

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
████████████ UPPER PROVIDENCE TOWNSHIP
4 DONNY BROOK WAY
LASHLEY KELVIN A & ALICE                                    $15.00
B 033F  L 10  U 010  1101 10/21/2014                            JU

RECORDING REQUESTED BY AND WHEN RECORDED RETURN TO:
**CALIBER HOME LOANS**
13801 Wireless Way
Oklahoma City, OK 73134

Prepared By:    **Haiduy Giang**                    Loan Number: ████████
MERS Min:    ████████████████
Parcel ID::    ████████████████

Space Above This Line For Recorder's Use

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST

FOR VALUE RECEIVED, the undersigned **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WILMINGTON FINANCE INC., ITS SUCCESSORS AND ASSIGNS** whose address is **P.O. BOX 2026, FLINT, MI  48501-2026**, hereby grants, assigns and transfers to **VOLT XIV ASSET HOLDINGS TRUST** whose address is **13801 WIRELESS WAY, OKLAHOMA CITY, OK  73134** all beneficial interest under that certain mortgage/Deed of Trust/Security Deed dated **03/14/2007** executed by **KELVIN ALVIN LASHLEY and ALICE LASHLEY** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WILMINGTON FINANCE INC., ITS SUCCESSORS AND ASSIGNS** in the amount of **$125,000.00** and recorded on **3/29/2007** as Instrument # **2007038824**, in Book/Volume or Liber No. **12069** , Page/folio **01672-01680.1** of Official Records in the County Recorder's office of **MONTGOMERY** County, **PA**, describing land herein as: **'SEE ATTACHED 'EXHIBIT A'**

Property Address:    **4 DONNY BROOK WAY, COLLEGEVILLE PA  19426**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR WILMINGTON FINANCE INC., ITS SUCCESSORS AND ASSIGNS**

Witness #1 *Sasha Candelana*

Witness #2 *Wilia Ralington*

County of San Diego )
State of California )

By: **Adan Roesner**

Title: **Vice President**

Date: _7/21/14_

On _July_ _21_, _2014_ before me, _B Gravitt_, Notary Public, personally appeared, *Adan Roesner*, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand official seal,

Notary Name: _B Gravitt_    My Commission Expires: _June 7, 2017_

I, *Adan Roesner*, certifies that the principal business and mailing address for this assignment and assignee is: Caliber Home Loans, Inc. 13801 Wireless Way, Oklahoma City, OK 73134.

Print Name: *Adan Roesner*    Date: _7·21·14_

B GRAVITT
Commission # 2027923
Notary Public - California
San Diego County
My Comm. Expires Jun 7, 2017

Exhibit A

ALL THAT CERTAIN LOT OR PIECE OF GROUND, SITUATE IN UPPER PROVIDENCE
TOWNSHIP, MONTGOMERY COUNTY, PENNSYLVANIA, AND DESCRIBED ACCORDING TO A
FINAL PLAN OF DONNY BROOK ESTATES MADE BY CZOP/SPECTOR, CONSULTING
ENGINEERS AND SURVEYORS, DATED 1/10/1997 AND LAST REVISED 5/21/1998 AND
RECORDED IN MONTGOMERY COUNTY PLAN BOOK A-58 PAGE 494, AS FOLLOWS, TO WIT:

BEGINNING AT A POINT IN THE SOUTHEASTERLY SIDE OF DONNY BROOK WAY WHICH
POINT OF BEGINNING IS AT THE DISTANCE OF 31 42 FEET MEASURED ON THE ARC OF A
CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 20 00 FEET FROM A POINT ON THE
NORTHEASTERLY SIDE OF HOPWOOD ROAD, THENCE EXTENDING FROM SAID POINT OF
BEGINNING, NORTH 46 DEGREES 16 MINUTES 05 SECONDS EAST 79 73 FEET TO A POINT, A
CORNER OF LOT NO 9 AS SHOWN ON SAID PLAN, THENCE EXTENDING ALONG THE SAME,
THE THREE FOLLOWING COURSES AND DISTANCES, VIZ.

1   SOUTH 42 DEGREES 15 MINUTES 46 SECONDS EAST 78.45 FEET TO A POINT, AND
2   NORTH 72 DEGREES 15 MINUTES 46 SECONDS WEST 111.11 FEET TO A POINT, AND
3   SOUTH 42 DEGREES 15 MINUTES 46 SECONDS EAST, CROSSING THE BED OF A CERTAIN
STORM DRAINAGE EASEMENT, ALSO THE BED OF A CERTAIN LANDSCAPE BUFFER
EASEMENT (OF VARIABLE WIDTH), ALSO CROSSING THE BED OF DONNY BROOK RUN,
ALSO CROSSING THE BED OF AN EXISTING 20 FEET WIDE SANITARY SEWER EASEMENT,
184 00 FEET TO A POINT IN LINE OF LAND NOW OR LATE OF KENNETH F & VIRGINIA
MAZUK;

THENCE EXTENDING ALONG THE SAME, THE TWO FOLLOWING COURSES AND DISTANCE,
VIZ.

1   SOUTH 47 DEGREES 44 MINUTES 14 SECONDS WEST 67 05 FEET TO A POINT, AND
2   SOUTH 30 DEGREES 33 MINUTES 14 SECONDS WEST 84 59 FEET TO A POINT ON THE
NORTHEASTERLY SIDE OF DONNY BROOK WAY,

THENCE EXTENDING ALONG THE SAME, NORTH 43 DEGREES 43 MINUTES 55 SECONDS
WEST 337 89 FEET TO A POINT PF RADIAL ROUND CURVE THEREON; THENCE EXTENDING
ON THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 20 00 FEET THE
ARC DISTANCE OF 31 42 FEET TO THE FIRST MENTIONED POINT AND PLACE OF
BEGINNING.




**RECORDER OF DEEDS**
MONTGOMERY COUNTY
*Nancy J. Becker*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MTG BK 14059 PG 01336 to 01339**
INSTRUMENT # : 2015095308
RECORDED DATE: 12/17/2015 01:21:27 PM



**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 4 |
|---|---|

| | |
|---|---|
| **Document Type:** Mortgage Assignment | **Transaction #:** |
| **Document Date:** 11/17/2015 | **Document Page Count:** |
| **Reference Info:** | **Operator Id:** |
| **RETURN TO: (**Simplifile) | **PAID BY:** |
| Milstead & Associates | MILSTEAD & ASSOCIATES |
| 1 E Stow Road | |
| Marlton, NJ 08053 | |
| (856) 482-1400 | |
| **\* PROPERTY DATA:** | |
| Parcel ID #: | |
| Address:        4 DONNY BROOK WAY | |
| | |
| PA | |
| Municipality:   Upper Providence Township | |
| (100%) | |
| School District:    Spring-Ford Area | |

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12069 PG 01672

| CONSIDERATION/SECURED AMT: | 125000.00 | MTG BK 14059 PG 01336 to 01339 |
|---|---|---|
| | | Recorded Date: 12/17/2015 01:21:27 PM |
| **FEES / TAXES:** | | |
| Recording Fee:Mortgage Assignment | $76.00 | I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania. |
| **Total:** | $76.00 | |



**Nancy J. Becker**
**Recorder of Deeds**

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Prepared By:
SELECT PORTFOLIO SERVICING, INC.
BILL KOCH,
3815 SOUTH WEST TEMPLE
SALT LAKE CITY, UT  84115
800-258-8602

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
         UPPER PROVIDENCE TOWNSHIP
4 DONNY BROOK WAY
LASHLEY KELVIN A & ALICE                 $15.00
B 033F  L 10  U 010  1101 12/17/2015         ND

When Recorded Return To:

RICHMOND MONROE GROUP
PO BOX 458
KIMBERLING CITY, MO  65686

Assessor's/Tax ID No.

---

## CORPORATE ASSIGNMENT OF MORTGAGE

**Montgomery, Pennsylvania    REFERENCE #**      **"LASHLEY"**
**INVESTOR #:**
Assignment Prepared on: November 17th, 2015.

Assignor: VOLT XIV ASSET HOLDINGS TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A.,
THROUGH CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE at C/O
CALIBER HOME LOANS, INC. 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-2550.
Assignee: DLJ MORTGAGE CAPITAL, INC. at C/O SELECT PORTFOLIO SERVICING, INC. 3815
SOUTH WEST TEMPLE, SALT LAKE CITY, UT 84115.

Executed By: KELVIN ALVIN LASHLEY AND ALICE LASHLEY HUSBAND AND WIFE To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE FOR WILMINGTON
FINANCE INC., ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 03/14/2007 Recorded: 03/29/2007 in Book/Reel/Liber: 12069 Page/Folio: 01672 as
Instrument/Document: 2007038824 In Montgomery County , State of Pennsylvania.

I do certify that the precise address of (grantee/assignee/mortgagee/etc) is DLJ MORTGAGE CAPITAL,
INC. at C/O SELECT PORTFOLIO SERVICING, INC. 3815 SOUTH WEST TEMPLE, SALT LAKE CITY,
UT  84115.
Attested By:

- Assigned by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ("MERS") AS NOMINEE
FOR WILMINGTON FINANCE INC., ITS SUCCESSORS AND ASSIGNS TO VOLT XIV ASSET
HOLDINGS TRUST Dated: 07/21/2014 Recorded: 10/21/2014 in Book/Reel/Liber: 13851 Page/Folio:
01168 as Instrument/Document: 2014070454

Assessor's/Tax ID No.

Property Address: 4 DONNY BROOK WAY, COLLEGEVILLE, PA 19426
in the Township of UPPER PROVIDENCE
   KNOW ALL MEN BY THESE PRESENTS that in consideration of the sum of TEN and NO/100ths
DOLLARS and other good and valuable consideration, paid to the above named Assignor, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $125,000.00 with interest, secured

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

thereby, together with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the Security Instrument.

   TO HAVE AND TO HOLD the said Security Instrument, and also the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

VOLT XIV ASSET HOLDINGS TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE
On __11/20/2015__

By: _____

Mindi Hernandez, Authorized Signatory


STATE OF __Oklahoma__
COUNTY OF __Oklahoma__

**Hailey Woosley**

On __11/20/2015__, before me, _____, a Notary Public in and for __Oklahoma__ in the State of __Oklahoma__, personally appeared
Mindi Hernandez_____, VOLT XIV ASSET HOLDINGS TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Notary Expires _____

BILL KOCH

(This area for notarial seal)

Exhibit A

ALL THAT CERTAIN LOT OR PIECE OF GROUND, SITUATE IN UPPER PROVIDENCE
TOWNSHIP, MONTGOMERY COUNTY, PENNSYLVANIA, AND DESCRIBED ACCORDING TO A
FINAL PLAN OF DONNY BROOK ESTATES MADE BY CZOP/SPECTOR, CONSULTING
ENGINEERS AND SURVEYORS, DATED 1/10/1997 AND LAST REVISED 5/21/1998 AND
RECORDED IN MONTGOMERY COUNTY PLAN BOOK A-58 PAGE 494, AS FOLLOWS, TO WIT:

BEGINNING AT A POINT IN THE SOUTHEASTERLY SIDE OF DONNY BROOK WAY WHICH
POINT OF BEGINNING IS AT THE DISTANCE OF 31 42 FEET MEASURED ON THE ARC OF A
CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 20 00 FEET FROM A POINT ON THE
NORTHEASTERLY SIDE OF HOPWOOD ROAD, THENCE EXTENDING FROM SAID POINT OF
BEGINNING, NORTH 46 DEGREES 16 MINUTES 05 SECONDS EAST 79 73 FEET TO A POINT, A
CORNER OF LOT NO 9 AS SHOWN ON SAID PLAN, THENCE EXTENDING ALONG THE SAME,
THE THREE FOLLOWING COURSES AND DISTANCES, VIZ.

1   SOUTH 42 DEGREES 15 MINUTES 46 SECONDS EAST 78.45 FEET TO A POINT, AND
2   NORTH 72 DEGREES 15 MINUTES 46 SECONDS WEST 111.11 FEET TO A POINT, AND
3   SOUTH 42 DEGREES 15 MINUTES 46 SECONDS EAST, CROSSING THE BED OF A CERTAIN
STORM DRAINAGE EASEMENT, ALSO THE BED OF A CERTAIN LANDSCAPE BUFFER
EASEMENT (OF VARIABLE WIDTH), ALSO CROSSING THE BED OF DONNY BROOK RUN,
ALSO CROSSING THE BED OF AN EXISTING 20 FEET WIDE SANITARY SEWER EASEMENT,
184 00 FEET TO A POINT IN LINE OF LAND NOW OR LATE OF KENNETH F & VIRGINIA
NAZUK;

THENCE EXTENDING ALONG THE SAME, THE TWO FOLLOWING COURSES AND DISTANCE,
VIZ.

1   SOUTH 47 DEGREES 44 MINUTES 14 SECONDS WEST 67 05 FEET TO A POINT, AND
2   SOUTH 30 DEGREES 33 MINUTES 14 SECONDS WEST 84 59 FEET TO A POINT ON THE
NORTHEASTERLY SIDE OF DONNY BROOK WAY,

THENCE EXTENDING ALONG THE SAME, NORTH 43 DEGREES 43 MINUTES 55 SECONDS
WEST 337 89 FEET TO A POINT PF RADIAL ROUND CURVE THEREON, THENCE EXTENDING
ON THE ARC OF A CIRCLE CURVING TO THE RIGHT HAVING A RADIUS OF 20 00 FEET THE
ARC DISTANCE OF 31 42 FEET TO THE FIRST MENTIONED POINT AND PLACE OF
BEGINNING.

 

**MTG BK 15641 PG 01611 to 01613**
INSTRUMENT # : 2022079316
RECORDED DATE: 08/04/2022 09:55:17 AM

RECORDER OF DEEDS
MONTGOMERY COUNTY
*Jeanne Sorg*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

**MONTGOMERY COUNTY ROD**

| OFFICIAL RECORDING COVER PAGE | Page 1 of 3 |
|---|---|

| | | |
|---|---|---|
| **Document Type:** Mortgage Assignment | **Transaction #:** | 6634083 - 1 Doc(s) |
| **Document Date:** 07/27/2022 | **Document Page Count:** | 2 |
| **Reference Info:** | **Operator Id:** | smassie |

| | |
|---|---|
| **RETURN TO: (**Simplifile) | **PAID BY:** |
| Residential Real Estate Review, Inc. | RESIDENTIAL REAL ESTATE REVIEW INC |
| 3217 Decker Lake Dr | |
| West Valley City, UT 84119-3284 | |
| (801) 594-6000 | |

**\* PROPERTY DATA:**
Parcel ID #:          61-00-00898-99-4
Address:               4 DONNY BROOK WAY

                           PA
Municipality:       Upper Providence Township
                           (100%)
School District:    Spring-Ford Area

**\* ASSOCIATED DOCUMENT(S):**
MTG BK 12069 PG 01653

| **FEES / TAXES:** | | MTG BK 15641 PG 01611 to 01613 |
|---|---|---|
| Recording Fee: Mortgage | | Recorded Date: 08/04/2022 09:55:17 AM |
| Assignment | $80.75 | |
| Additional Names Fee | $0.50 | I hereby CERTIFY that this document is |
| | | recorded in the Recorder of Deeds Office in |
| **Total:** | $81.25 | Montgomery County, Pennsylvania. |



**Jeanne Sorg**
**Recorder of Deeds**

Rev1 2016-01-29

# PLEASE DO NOT DETACH

## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION**

Prepared By:    **Alicia Lope**        **Alicia Lopez**

Select Portfolio Servicing, Inc.
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

When Recorded Return To:
Residential RealEstate Review
Collateral Document Services
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
61-00-00898-99-4   UPPER PROVIDENCE TOWNSHIP
4 DONNY BROOK WAY
LASHLEY KELVIN A & ALICE                        $15.00
B 033F  L 10  U 010  1101 08/04/2022              JU

**Assessor's/Tax ID No.: 61-00-00898-99-4**

---

## CORPORATE ASSIGNMENT OF MORTGAGE

**Montgomery, Pennsylvania**
**Residential RealEstate Review#: 0025034661,  40001**

Date of Assignment:   **JUL 2 7 2022**
Assignor: THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CIT MORTGAGE LOAN TRUST
2007-1, BY SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT at c/o SELECT
PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119
Assignee: THE BANK OF NEW YORK MELLON, SUCCESSOR TO THE BANK OF NEW YORK, NOT
IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE ON BEHALF OF THE HOLDERS OF THE
CIT MORTGAGE LOAN TRUST, 2007-1 ASSET-BACKED CERTIFICATES, SERIES 2007-1 at c/o
SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER LAKE DRIVE, SALT LAKE CITY, UT 84119

Executed By: KELVIN ALVIN LASHLEY AND ALICE LASHLEY HUSBAND AND WIFE  To: MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR WILMINGTON
FINANCE INC.. ITS SUCCESSORS AND ASSIGNS
Dated: 03-14-2007 Recorded: 03-29-2007 as Instrument/Document 2007038823, Book/Reel/Liber
12069, Page/Folio 01653  In the County of Montgomery, State of Pennsylvania.

Property Address: 4 DONNY BROOK WAY, COLLEGEVILLE, PA  19426 in the Township of UPPER
PROVIDENCE

I do certify that the precise address of THE BANK OF NEW YORK MELLON, SUCCESSOR TO THE
BANK OF NEW YORK, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE ON BEHALF
OF THE HOLDERS OF THE CIT MORTGAGE LOAN TRUST, 2007-1 ASSET-BACKED
CERTIFICATES, SERIES 2007-1 is c/o SELECT PORTFOLIO SERVICING, INC., 3217 S. DECKER
LAKE DRIVE, SALT LAKE CITY, UT 84119
Attested By: _Alicia_____

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $500,000.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the
Security Instrument.

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee
forever, subject to the terms contained in said Security Instrument.

*7/18/2022 12:26:58 PM*-11031*-12894*1148*PASTATE_MORT_ASSIGN_ASSN

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

THE BANK OF NEW YORK MELLON, AS TRUSTEE FOR CIT MORTGAGE LOAN TRUST 2007-1, BY
SELECT PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT

On _____ JUL 2 7 2022

By: _____
**Alicia Lopez**
**Document Control Officer**
STATE OF Utah
COUNTY OF Salt Lake

On, **JUL 2 7 2022** _____, before me, _____ **Malissa Wilkins** _____, a Notary Public in and
for SALT LAKE in the State of UTAH, personally appeared
_____ **Alicia Lopez** _____, **Document Control Officer** _____, of THE BANK OF
NEW YORK MELLON, AS TRUSTEE FOR CIT MORTGAGE LOAN TRUST 2007-1, BY SELECT
PORTFOLIO SERVICING, INC. AS ITS ATTORNEY IN FACT, personally known to me (or proved to me
on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
**Malissa Wilkins**

MALISSA WILKINS
Notary Public State of Utah
My Commission Expires on:
June 15, 2024
Comm. Number: 712537

# EXHIBIT "E"

**L.B.F. 3015.1**

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF PENNSYLVANIA

In re:  Lashley, Kelvin Alvin

Chapter  13

Case No.  **24-10595**

Debtor(s)

## Chapter 13 Plan

❏ Original
☑ **First** Amended

Date:  **07/31/2024**

### THE DEBTOR HAS FILED FOR RELIEF UNDER
### CHAPTER 13 OF THE BANKRUPTCY CODE

### YOUR RIGHTS WILL BE AFFECTED

You should have received from the court a separate Notice of the Hearing on Confirmation of Plan, which contains the date of the confirmation hearing on the Plan proposed by the Debtor. This document is the actual Plan proposed by the Debtor. You should read these papers carefully and discuss them with your attorney. **ANYONE WHO WISHES TO OPPOSE ANY PROVISION OF THIS PLAN MUST FILE A WRITTEN OBJECTION** in accordance with Bankruptcy Rule 3015 and Local Rule 3015-4. **This Plan may be confirmed and become binding, unless a written objection is filed.**

### IN ORDER TO RECEIVE A DISTRIBUTION UNDER THE PLAN, YOU MUST FILE A PROOF OF CLAIM BY THE DEADLINE STATED IN THE NOTICE OF MEETING OF CREDITORS.

**Part 1:    Bankruptcy Rule 3015.1(c) Disclosures**

❏ Plan contains non-standard or additional provisions – see Part 9

❏ Plan limits the amount of secured claim(s) based on value of collateral – see Part 4

❏ Plan avoids a security interest or lien – see Part 4 and/or Part 9

**Part 2:    Plan Payment, Length and Distribution –** *PARTS 2(c) & 2(e) MUST BE COMPLETED IN EVERY CASE*

**§ 2(a) Plan payments (For Initial and Amended Plans):**

**Total Length of Plan:** _____ **60** _____ **months.**

**Total Base Amount** to be paid to the Chapter 13 Trustee ("Trustee") **$265,500.00**
Debtor shall pay the Trustee _____ **$2,500.00** _____ per month for _____ **5** _____ months and then
Debtor shall pay the Trustee _____ **$4,600.00** _____ per month for the remaining _____ **55** _____ months;

**or**

Debtor shall have already paid the Trustee _____ through month number _____ and
then shall pay the Trustee _____ per month for the remaining _____ months.

1

☐ Other changes in the scheduled plan payment are set forth in § 2(d)

**§ 2(b)** Debtor shall make plan payments to the Trustee from the following sources in addition to future wages (Describe source, amount and date when funds are available, if known):

**§ 2(c) Alternative treatment of secured claims:**

☑ **None.** If "None" is checked, the rest of § 2(c) need not be completed.

**§ 2(d) Other information that may be important relating to the payment and length of Plan:**

**§ 2(e) Estimated Distribution:**

| | | | | |
|---|---|---|---|---|
| A. | | Total Priority Claims (Part 3) | | |
| | 1. | Unpaid attorney's fees | $ | 4,775.00 |
| | 2. | Unpaid attorney's costs | $ | 0.00 |
| | 3. | Other priority claims (e.g., priority taxes) | $ | 0.00 |
| B. | | Total distribution to cure defaults (§ 4(b)) | $ | 224,231.23 |
| C. | | Total distribution on secured claims (§§ 4(c) &(d)) | $ | 9,866.08 |
| D. | | Total distribution on general unsecured claims(Part 5) | $ | 0.00 |
| | | Subtotal | $ | 238,872.31 |
| E. | | Estimated Trustee's Commission | $ | 26,627.69 |
| F. | | Base Amount | $ | 265,500.00 |

**§2 (f) Allowance of Compensation Pursuant to L.B.R. 2016-3(a)(2)**

☐ **By checking this box, Debtor's counsel certifies that the information contained in Counsel's Disclosure of Compensation [Form B2030] is accurate, qualifies counsel to receive compensation pursuant to L.B.R. 2016-3(a)(2), and requests this Court approve counsel's compensation in the total amount of $ _____ , with the Trustee distributing to counsel the amount stated in §2(e)A.1. of the Plan. Confirmation of the plan shall constitute allowance of the requested compensation.**

| Part 3: | Priority Claims |
|---|---|

**§ 3(a)** Except as provided in § 3(b) below, all allowed priority claims will be paid in full unless the creditor agrees otherwise.

| Creditor | Claim Number | Type of Priority | Amount to be Paid by Trustee |
|---|---|---|---|
| Cibik Law, P.C. | | Attorney Fees | $4,775.00 |

**§ 3(b) Domestic Support obligations assigned or owed to a governmental unit and paid less than full amount.**

☑ **None.** If "None" is checked, the rest of § 3(b) need not be completed.

2

## Part 4: Secured Claims

### § 4(a) Secured Claims Receiving No Distribution from the Trustee:

☑ **None.** If "None" is checked, the rest of § 4(a) need not be completed.

### § 4(b) Curing default and maintaining payments

☐ **None.** If "None" is checked, the rest of § 4(b) need not be completed.

The Trustee shall distribute an amount sufficient to pay allowed claims for prepetition arrearages; and, Debtor shall pay directly to creditor monthly obligations falling due after the bankruptcy filing in accordance with the parties' contract.

| Creditor | Claim Number | Description of Secured Property and Address, if real property | Amount to be Paid by Trustee |
|---|---|---|---|
| Select Portfolio Servicing, Inc (Arrearage) | 12 | 4 Donneybrook Ln Collegeville, PA 19426-4408 | $186,942.45 |
| Select Portfolio Servicing, Inc (Arrearage) | 13 | 4 Donneybrook Ln Collegeville, PA 19426-4408 | $36,081.96 |
| Rushmore Loan Mgmt Srvc (Arrearage) | 9 | 34 Ashmead Pl S Philadelphia, PA 19144-2917 | $951.78 |
| Shellpoint Mortgage Servicing (Arrearage) | 11 | 54 W Reger St Philadelphia, PA 19144-2980 | $255.04 |

### § 4(c) Allowed secured claims to be paid in full: based on proof of claim or preconfirmation determination of the amount, extent or validity of the claim

☐ **None.** If "None" is checked, the rest of § 4(c) need not be completed.

(1) Allowed secured claims listed below shall be paid in full and their liens retained until completion of payments under the plan.

(2) If necessary, a motion, objection and/or adversary proceeding, as appropriate, will be filed to determine the amount, extent or validity of the allowed secured claim and the court will make its determination prior to the confirmation hearing.

(3) Any amounts determined to be allowed unsecured claims will be treated either: (A) as a general unsecured claim under Part 5 of the Plan or (B) as a priority claim under Part 3, as determined by the court.

(4) In addition to payment of the allowed secured claim, "present value" interest pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) will be paid at the rate and in the amount listed below. *If the claimant included a different interest rate or amount for "present value" interest in its proof of claim or otherwise disputes the amount provided for "present value" interest, the claimant must file an objection to confirmation.*

(5) Upon completion of the Plan, payments made under this section satisfy the allowed secured claim and release the corresponding lien.

| Name of Creditor | Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
| AmeriCredit Financial Services, Inc. | 7 | 2013 Lincoln MKS | $2,719.81 | 9.50% | $707.31 | $3,427.12 |
| Pennsylvania Department of Revenue | 1 | All Real and Personal Property | $469.91 | 0.00% | $0.00 | $469.91 |

3

| Name of Creditor | Claim Number | Description of Secured Property | Allowed Secured Claim | Present Value Interest Rate | Dollar Amount of Present Value Interest | Amount to be Paid by Trustee |
|---|---|---|---|---|---|---|
| City of Philadelphia | 14 | 54 W Reger St Philadelphia, PA 19144-2980 34 Ashmead Pl S Philadelphia, PA 19144-2917 | $5,969.05 | 0.00% | $0.00 | $5,969.05 |

**§ 4(d) Allowed secured claims to be paid in full that are excluded from 11 U.S.C. § 506**

☑ **None.** If "None" is checked, the rest of § 4(d) need not be completed.

**§ 4(e) Surrender**

☑ **None.** If "None" is checked, the rest of § 4(e) need not be completed.

**§ 4(f) Loan Modification**

☑ **None.** If "None" is checked, the rest of § 4(f) need not be completed.

(1) Debtor shall pursue a loan modification directly with _____ or its successor in interest or its current servicer ("Mortgage Lender"), in an effort to bring the loan current and resolve the secured arrearage claim.

(2) During the modification application process, Debtor shall make adequate protection payments directly to Mortgage Lender in the amount of _____ per month, which represents _____ (*describe basis of adequate protection payment*). Debtor shall remit the adequate protection payments directly to the Mortgage Lender.

(3) If the modification is not approved by _____ (date), Debtor shall either (A) file an amended Plan to otherwise provide for the allowed claim of the Mortgage Lender; or (B) Mortgage Lender may seek relief from the automatic stay with regard to the collateral and Debtor will not oppose it.

**Part 5:    General Unsecured Claims**

**§ 5(a) Separately classified allowed unsecured non-priority claims**

☑ **None.** If "None" is checked, the rest of § 5(a) need not be completed.

**§ 5(b) Timely filed unsecured non-priority claims**

*(1)* Liquidation Test *(check one box)*

☑ All Debtor(s) property is claimed as exempt.

☐ Debtor(s) has non-exempt property valued at $ _____ for purposes of § 1325(a)(4) and plan provides for distribution of $ _____ to allowed priority and unsecured general creditors.

**(2)** Funding: § 5(b) claims to be paid as follows *(check one box)*

☑ Pro rata

☐ 100%

☐ Other (Describe) _____

**Part 6:    Executory Contracts & Unexpired Leases**

☑ **None.** If "None" is checked, the rest of § 6 need not be completed.

4

## Part 7:     Other Provisions

### § 7(a) General principles applicable to the Plan

***(1)*** Vesting of Property of the Estate *(check one box)*

☑ Upon confirmation

☐ Upon discharge

(2) Subject to Bankruptcy Rule 3012 and 11 U.S.C. §1322(a)(4), the amount of a creditor's claim listed in its proof of claim controls over any contrary amounts listed in Parts 3, 4 or 5 of the Plan.

(3) Post-petition contractual payments under § 1322(b)(5) and adequate protection payments under § 1326(a)(1)(B),(C) shall be disbursed to the creditors by the debtor directly. All other disbursements to creditors shall be made by the Trustee.

(4) If Debtor is successful in obtaining a recovery in a personal injury or other litigation in which Debtor is the plaintiff, before the completion of plan payments, any such recovery in excess of any applicable exemption will be paid to the Trustee as a special Plan payment to the extent necessary to pay priority and general unsecured creditors, or as agreed by the Debtor and the Trustee and approved by the court.

### § 7(b) Affirmative duties on holders of claims secured by a security interest in debtor's principal residence

(1) Apply the payments received from the Trustee on the pre-petition arrearage, if any, only to such arrearage.

(2) Apply the post-petition monthly mortgage payments made by the Debtor to the post-petition mortgage obligations as provided for by the terms of the underlying mortgage note.

(3) Treat the pre-petition arrearage as contractually current upon confirmation for the Plan for the sole purpose of precluding the imposition of late payment charges or other default-related fees and services based on the pre-petition default or default(s). Late charges may be assessed on post-petition payments as provided by the terms of the mortgage and note.

(4) If a secured creditor with a security interest in the Debtor's property sent regular statements to the Debtor pre-petition, and the Debtor provides for payments of that claim directly to the creditor in the Plan, the holder of the claims shall resume sending customary monthly statements.

(5) If a secured creditor with a security interest in the Debtor's property provided the Debtor with coupon books for payments prior to the filing of the petition, upon request, the creditor shall forward post-petition coupon book(s) to the Debtor after this case has been filed.

(6) Debtor waives any violation of stay claim arising from the sending of statements and coupon books as set forth above.

### § 7(c) Sale of Real Property

☑ **None.** If "None" is checked, the rest of § 7(c) need not be completed.

## Part 8:     Order of Distribution

**The order of distribution of Plan payments will be as follows:**

**Level 1:** Trustee Commissions*
**Level 2:** Domestic Support Obligations
**Level 3:** Adequate Protection Payments
**Level 4:** Debtor's attorney's fees
**Level 5:** Priority claims, pro rata
**Level 6:** Secured claims, pro rata
**Level 7:** Specially classified unsecured claims
**Level 8:** General unsecured claims
**Level 9:** Untimely filed general unsecured non-priority claims to which debtor has not objected

*\*Percentage fees payable to the standing trustee will be paid at the rate fixed by the United States Trustee not to exceed ten (10) percent.*

**Part 9:     Non Standard or Additional Plan Provisions**

Under Bankruptcy Rule 3015.1(e), Plan provisions set forth below in Part 9 are effective only if the applicable box in Part 1 of this Plan is checked. Nonstandard or additional plan provisions placed elsewhere in the Plan are void.

☑ **None.** If "None" is checked, the rest of Part 9 need not be completed.

**Part 10:     Signatures**

By signing below, attorney for Debtor(s) or unrepresented Debtor(s) certifies that this Plan contains no nonstandard or additional provisions other than those in Part 9 of the Plan, and that the Debtor(s) are aware of, and consent to the terms of this Plan.

Date:     **07/31/2024**                                                     **/s/ Michael A. Cibik**

                                                                                   Michael A. Cibik
                                                                                   Attorney for Debtor(s)


          If Debtor(s) are unrepresented, they must sign below.


Date:     _____

                                                                                   Kelvin Alvin Lashley
                                                                                   Debtor

Date:     _____

                                                                                   Joint Debtor

6

**EXHIBIT "F"**

**SPS** SELECT Portfolio SERVICING, inc.

**Financial Breakdown Statement**
Data date:09/19/2024 01:15:23PM

Prepared By: SpoorthiKC

## MFR Datasheet

### Loan Information

| | | | |
|---|---|---|---|
| **Loan Number** | | **Client Id** | 4886 |
| **Debtors Name - 1** | LASHLEY, KELVIN ALVIN | **Acquired Date** | 02/01/2019 |
| **Debtors Name - 2** | LASHLEY, ALICE | **Note Type** | VAR |
| **Property Address** | 4 DONNY BROOK WAY | **Current Interest Rate** | 1 25000% |
| **City** | COLLEGEVILLE | **Lien Position** | 1st |
| **Zip** | 19426 | **Last BPO Value** | $865,000.00 |
| **Property State** | PA | **Contractual Due Date** | 10/01/2021 |
| **Maturity Date** | 04/01/2037 | **Multiple Loans** | 0025034661 |
| | | **Loan Modified Date** | 01/09/2017 |

### Bankruptcy Information

| | | | | | |
|---|---|---|---|---|---|
| **Bankruptcy Case #** | 24-10595 | **Previous MFR?** | MM/DD/YYYY | **Comment on Previous Actions** | |
| **Filing Date** | 02/23/2024 | **Previous Agreed Order?** | MM/DD/YYYY | | |
| **Person filing** | KELVIN ALVIN LASHLEY | **Post Amounts in Plan?** | No | | |
| **Number of previous filings** | 3 | **TPA?** | No | | |

### Post Petition Default Information

| | | | |
|---|---|---|---|
| **Post petition due date** | 07/01/2024 | **Post petition insurance** | $0.00 |
| **Post petition amount due** | $15,454 68 | **Post petition taxes** | $0.00 |
| **Escrow Shortage** | $0.00 | **Post petition MI** | $0.00 |
| **Suspense** | $0.00 | **Total Post petition due** | $15,454.68 |
| **Total for Agreed Order** | $15,454.68 | | |

### Post Petition Payment History

| Post Pmt Rcpt | Post Due Dt Pd | Mo $ Due | $ Received | Comments |
|---|---|---|---|---|
| 04/05/2024 | 03/01/2024 | $5,151.56 | $5,151.56 | |
| 04/26/2024 | 04/01/2024 | $5,151.56 | $5,151.56 | |
| 05/30/2024 | Partial Payment | $0.00 | $1,601.00 | Partial Payment |
| 05/30/2024 | 05/01/2024 | $5,151.56 | $3,550.56 | |
| 07/30/2024 | 06/01/2024 | $5,151.56 | $5,151.56 | |
| Due | 07/01/2024 | $5,151.56 | $0.00 | |
| Due | 08/01/2024 | $5,151.56 | $0.00 | |
| Due | 09/01/2024 | $5,151.56 | $0.00 | |
| **Total Due** | | **$36,060.92** | | **Total Pmts Due** |
| **Total Received** | | | **$20,606.24** | **$15,454.68** |

### Post Petition Insurance/Tax/MI Advances

| Post Insurance | Comments | Post Ins Amt | Post Ins Total |
|---|---|---|---|
| **Post Petition Insurance Total** | | $0.00 | |

| Post Tax | Comments | Post Tax Amt | Post Tax Total |
|---|---|---|---|
| **Post Petition Taxes Total** | | $0.00 | |

| Post MI | Comments | Post MI Amt | Post MI Total |
|---|---|---|---|
| **Post Petition MI Total** | | $0.00 | |

### Post Petition Insurance/Tax/MI Advance Comments

Escrowed Loan

### Pre Petition claim information

| | |
|---|---|
| **Pre petition claim amount** | $187,143.99 |
| **Pre petition received** | $0.00 |



**Financial Breakdown Statement**
Data date:09/19/2024 01:15:23PM

Prepared By: SpoorthiKC

| Pre petition remaining | $187,143.99 |
|---|---|

| Pre Petition Comments |
|---|
| None |

**SPS SELECT** *Portfolio* **SERVICING, inc.**

Preparation Date:09/19/2024
Prepared By: SpoorthiKC

## MFR Post-Petition Payment History for Filing

| Loan Information | |
|---|---|
| Loan Number | |
| Debtors Name - 1 | LASHLEY, KELVIN ALVIN |
| Debtors Name - 2 | LASHLEY, ALICE |
| Property Address | 4 DONNY BROOK WAY |
| Property State | PA |

| Bankruptcy Information | |
|---|---|
| Bankruptcy Case # | 24-10595 |
| Filing Date | 02/23/2024 |
| Person filing | KELVIN ALVIN LASHLEY |
| Number of previous filings | 3 |

| Post Petition Default Information | |
|---|---|
| Post petition due date | 07/01/2024 |
| Post petition amount due | $15,454.68 |
| Escrow Shortage | $0.00 |
| Suspense | $0.00 |
| Total Post petition due | $15,454.68 |

| Post Petition Payment History | | | | |
|---|---|---|---|---|
| **Post Pmt Rcpt** | **Post Due Dt Pd** | **Mo $ Due** | **$ Received** | **Comments** |
| 04/05/2024 | 03/01/2024 | $5,151.56 | $5,151.56 | |
| 04/26/2024 | 04/01/2024 | $5,151.56 | $5,151.56 | |
| 05/30/2024 | Partial Payment | $0.00 | $1,601.00 | Partial Payment |
| 05/30/2024 | 05/01/2024 | $5,151.56 | $3,550.56 | |
| 07/30/2024 | 06/01/2024 | $5,151.56 | $5,151.56 | |
| Due | 07/01/2024 | $5,151.56 | $0.00 | |
| Due | 08/01/2024 | $5,151.56 | $0.00 | |
| Due | 09/01/2024 | $5,151.56 | $0.00 | |
| **Total Due** | | **$36,060.92** | | **Total Pmts Due** |
| **Total Received** | | | **$20,606.24** | **$15,454.68** |

**SPS** *Select Portfolio SERVICING, inc.*

Preparation Date:09/19/2024
Prepared By: SpoorthiKC

## Prior and SPS Payment History

| Payments Detail | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Transaction Date | Transaction Description | Trans action Code | Due Date | Payment | Principal | Interest | Escrow | Fee / Advance | Fee / Advance Description | Unapplied | Restricted Escrow |
| 02/11/2019 | New Loan Setup | 142 | 01/01/2019 | $0.00 | ($587,740.24) | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 02/11/2019 | Pre-distributed Interest, Escrow, Payment | 170 | 01/01/2019 | ($8,508.52) | $0.00 | $0.00 | ($8,508.52) | $0.00 | | $0.00 | $0.00 |
| 02/12/2019 | Non-Cash Balance Adjustment | 143 | 01/01/2019 | $0.00 | $111,192.11 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 02/12/2019 | Non-Cash Balance Adjustment | 143 | 01/01/2019 | $0.00 | ($111,192.11) | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 03/27/2019 | NSF Reversal | 148 | 01/01/2019 | $0.00 | $0.00 | ($496.40) | ($2,398.72) | $0.00 | | $0.00 | $0.00 |
| 04/15/2019 | Modified Payment | 172 | 01/01/2019 | $4,018.48 | $0.00 | $496.40 | $2,398.72 | $0.00 | | $1,123.36 | $0.00 |
| 04/15/2019 | Modified Payment | 172 | 01/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 04/15/2019 | Custom Payment | 173 | 02/01/2019 | $15.00 | $0.00 | $0.00 | $0.00 | $15.00 | | $0.00 | $0.00 |
| 04/16/2019 | Short Payment – Escrow Shorted | 174 | 02/01/2019 | $0.00 | $0.00 | $496.40 | $626.96 | $0.00 | | ($1,123.36) | $0.00 |
| 04/16/2019 | Custom Payment | 173 | 02/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 05/15/2019 | Modified Payment | 172 | 03/01/2019 | $4,018.48 | $0.00 | $496.40 | $2,398.72 | $0.00 | | $1,123.36 | $0.00 |
| 05/15/2019 | Modified Payment | 172 | 03/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 05/16/2019 | Short Payment – Escrow Shorted | 174 | 04/01/2019 | $0.00 | $0.00 | $496.40 | $626.96 | $0.00 | | ($1,123.36) | $0.00 |
| 05/16/2019 | Custom Payment | 173 | 04/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 06/17/2019 | Modified Payment | 172 | 05/01/2019 | $4,018.48 | $0.00 | $496.40 | $2,398.72 | $0.00 | | $1,123.36 | $0.00 |
| 06/17/2019 | Modified Payment | 172 | 05/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 06/18/2019 | Short Payment – Escrow Shorted | 174 | 06/01/2019 | $0.00 | $0.00 | $496.40 | $626.96 | $0.00 | | ($1,123.36) | $0.00 |
| 06/18/2019 | Custom Payment | 173 | 06/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 06/27/2019 | Mis-application Reversal | 147 | 06/01/2019 | $0.00 | $0.00 | ($496.40) | ($626.96) | $0.00 | | $1,123.36 | $0.00 |
| 06/27/2019 | Mis-application Reversal | 147 | 05/01/2019 | $0.00 | $0.00 | ($496.40) | ($2,398.72) | $0.00 | | $2,895.12 | $0.00 |
| 06/27/2019 | NSF Reversal | 148 | 05/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | ($4,018.48) | $0.00 |
| 06/28/2019 | Modified Payment | 172 | 05/01/2019 | $4,018.48 | $0.00 | $0.00 | $0.00 | $0.00 | | $4,018.48 | $0.00 |
| 07/05/2019 | Custom Payment | 173 | 05/01/2019 | $0.00 | $0.00 | $496.40 | $2,398.72 | $0.00 | | ($2,895.12) | $0.00 |
| 07/05/2019 | Custom Payment | 173 | 05/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/08/2019 | Short Payment – Escrow Shorted | 174 | 06/01/2019 | $0.00 | $0.00 | $496.40 | $626.96 | $0.00 | | ($1,123.36) | $0.00 |
| 07/08/2019 | Custom Payment | 173 | 06/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/11/2019 | Mis-application Reversal | 147 | 06/01/2019 | $0.00 | $0.00 | ($496.40) | ($626.96) | $0.00 | | $1,123.36 | $0.00 |
| 07/11/2019 | Mis-application Reversal | 147 | 05/01/2019 | $0.00 | $0.00 | ($496.40) | ($2,398.72) | $0.00 | | $2,895.12 | $0.00 |
| 07/11/2019 | Mis-application Reversal | 147 | 04/01/2019 | $0.00 | $0.00 | ($496.40) | ($626.96) | $0.00 | | $1,123.36 | $0.00 |
| 07/11/2019 | Mis-application Reversal | 147 | 03/01/2019 | $0.00 | $0.00 | ($496.40) | ($2,398.72) | $0.00 | | $2,895.12 | $0.00 |
| 07/11/2019 | Mis-application Reversal | 147 | 02/01/2019 | $0.00 | $0.00 | ($496.40) | ($626.96) | $0.00 | | $1,123.36 | $0.00 |
| 07/11/2019 | Mis-application Reversal | 147 | 01/01/2019 | $0.00 | $0.00 | ($496.40) | ($2,398.72) | $0.00 | | $2,895.12 | $0.00 |
| 07/19/2019 | Custom Payment | 173 | 01/01/2019 | $0.00 | $0.00 | $496.40 | $2,398.72 | $0.00 | | ($11,580.48) | $0.00 |
| 07/19/2019 | Custom Payment | 173 | 01/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/19/2019 | Custom Payment | 173 | 02/01/2019 | $0.00 | $0.00 | $496.40 | $2,398.72 | $0.00 | | $0.00 | $0.00 |
| 07/19/2019 | Custom Payment | 173 | 02/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/19/2019 | Custom Payment | 173 | 03/01/2019 | $0.00 | $0.00 | $496.40 | $2,398.72 | $0.00 | | $0.00 | $0.00 |
| 07/19/2019 | Custom Payment | 173 | 03/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/19/2019 | Custom Payment | 173 | 04/01/2019 | $0.00 | $0.00 | $496.40 | $2,398.72 | $0.00 | | $0.00 | $0.00 |
| 07/19/2019 | Custom Payment | 173 | 04/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/19/2019 | Short Payment – Escrow Shorted | 174 | 05/01/2019 | $0.00 | $0.00 | $496.40 | $0.00 | ($21.44) | | ($474.96) | $0.00 |
| 07/19/2019 | Custom Payment | 173 | 05/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/22/2019 | Pre-distributed Interest, Escrow, Payment | 170 | 06/01/2019 | ($21.44) | $0.00 | $0.00 | ($21.44) | $0.00 | | $0.00 | $0.00 |
| 07/22/2019 | Pre-distributed Interest, Escrow, Payment | 170 | 06/01/2019 | $21.44 | $0.00 | $0.00 | $21.44 | $0.00 | | $0.00 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 06/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | ($21.44) | | $21.44 | $0.00 |

**SPS** SELECT *Portfolio* SERVICING, inc.

Preparation Date:09/19/2024
Prepared By: SpoorthiKC

| Date | Description | Num | Eff Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/23/2019 | Mis-application Reversal | 147 | 06/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $21.44 | | ($21.44) | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 06/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 05/01/2019 | $0.00 | $0.00 | ($496.40) | $0.00 | $21.44 | | $474.96 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 05/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 04/01/2019 | $0.00 | $0.00 | ($496.40) | ($2,398.72) | $0.00 | | $2,895.12 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 04/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 03/01/2019 | $0.00 | $0.00 | ($496.40) | ($2,398.72) | $0.00 | | $2,895.12 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 03/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 02/01/2019 | $0.00 | $0.00 | ($496.40) | ($2,398.72) | $0.00 | | $2,895.12 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 02/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/23/2019 | Mis-application Reversal | 147 | 01/01/2019 | $0.00 | $0.00 | ($496.40) | ($2,398.72) | $0.00 | | $2,895.12 | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 01/01/2019 | $2,895.12 | $0.00 | $496.40 | $2,398.72 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 01/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Short Payment – Escrow Shorted | 174 | 02/01/2019 | $0.00 | $0.00 | $496.40 | $626.96 | $0.00 | | ($4,018.48) | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 02/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 03/01/2019 | $0.00 | $0.00 | $496.40 | $2,398.72 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 03/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Short Payment – Escrow Shorted | 174 | 04/01/2019 | $0.00 | $0.00 | $496.40 | $626.96 | $0.00 | | ($4,018.48) | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 04/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 05/01/2019 | $0.00 | $0.00 | $496.40 | $2,398.72 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 05/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 06/01/2019 | $0.00 | $0.00 | $496.40 | $1,582.51 | $0.00 | | ($4,018.48) | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 06/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 07/01/2019 | $0.00 | $0.00 | $496.40 | $1,443.17 | $0.00 | | $0.00 | $0.00 |
| 07/25/2019 | Custom Payment | 173 | 07/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 10/19/2022 | Custom Payment | 173 | 08/01/2019 | $836.74 | $0.00 | $0.00 | $0.00 | $0.00 | | $836.74 | $0.00 |
| 11/02/2022 | Custom Payment | 173 | 08/01/2019 | $5,150.48 | $0.00 | $496.40 | $1,443.17 | $0.00 | | $3,210.91 | $0.00 |
| 11/02/2022 | Custom Payment | 173 | 08/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 11/03/2022 | Custom Payment | 173 | 09/01/2019 | $0.00 | $0.00 | $496.40 | $1,443.17 | $0.00 | | ($1,939.57) | $0.00 |
| 11/03/2022 | Custom Payment | 173 | 09/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 12/05/2022 | Custom Payment | 173 | 10/01/2019 | $5,150.48 | $0.00 | $496.40 | $1,443.17 | $0.00 | | $3,210.91 | $0.00 |
| 12/05/2022 | Custom Payment | 173 | 10/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 12/06/2022 | Custom Payment | 173 | 11/01/2019 | $0.00 | $0.00 | $496.40 | $1,443.17 | $0.00 | | ($1,939.57) | $0.00 |
| 12/06/2022 | Custom Payment | 173 | 11/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 12/07/2022 | Custom Payment | 173 | 12/01/2019 | $0.00 | $0.00 | $496.40 | $1,443.17 | $0.00 | | ($1,939.57) | $0.00 |
| 12/07/2022 | Custom Payment | 173 | 12/01/2019 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 01/11/2023 | Custom Payment | 173 | 01/01/2020 | $5,150.48 | $0.00 | $496.40 | $1,443.17 | $0.00 | | $3,210.91 | $0.00 |
| 01/11/2023 | Custom Payment | 173 | 01/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 01/12/2023 | Custom Payment | 173 | 02/01/2020 | $0.00 | $0.00 | $496.40 | $1,443.17 | $0.00 | | ($1,939.57) | $0.00 |
| 01/12/2023 | Custom Payment | 173 | 02/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 02/09/2023 | Custom Payment | 173 | 03/01/2020 | $5,151.00 | $0.00 | $496.40 | $1,443.17 | $0.00 | | $3,211.43 | $0.00 |
| 02/09/2023 | Custom Payment | 173 | 03/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 02/10/2023 | Custom Payment | 173 | 04/01/2020 | $0.00 | $0.00 | $496.40 | $1,443.17 | $0.00 | | ($1,939.57) | $0.00 |
| 02/10/2023 | Custom Payment | 173 | 04/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 02/14/2023 | Custom Payment | 173 | 05/01/2020 | $0.00 | $0.00 | $496.40 | $1,443.17 | $0.00 | | ($1,939.57) | $0.00 |
| 02/14/2023 | Custom Payment | 173 | 05/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 04/04/2023 | Custom Payment | 173 | 06/01/2020 | $5,151.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | $3,127.01 | $0.00 |
| 04/04/2023 | Custom Payment | 173 | 06/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 04/05/2023 | Custom Payment | 173 | 07/01/2020 | $0.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | ($2,023.99) | $0.00 |
| 04/05/2023 | Custom Payment | 173 | 07/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 04/06/2023 | Custom Payment | 173 | 08/01/2020 | $0.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | ($2,023.99) | $0.00 |
| 04/06/2023 | Custom Payment | 173 | 08/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 05/30/2023 | Custom Payment | 173 | 09/01/2020 | $5,151.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | $3,127.01 | $0.00 |
| 05/30/2023 | Custom Payment | 173 | 09/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 05/31/2023 | Custom Payment | 173 | 10/01/2020 | $0.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | ($2,023.99) | $0.00 |
| 05/31/2023 | Custom Payment | 173 | 10/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |

**SPS SELECT Portfolio SERVICING, inc.**

Preparation Date:09/19/2024
Prepared By: SpoorthiKC

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/07/2023 | Custom Payment | 173 | 11/01/2020 | $0.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | ($2,023.99) | $0.00 |
| 07/07/2023 | Custom Payment | 173 | 11/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 04/05/2024 | Custom Payment | 173 | 12/01/2020 | $5,151.56 | $0.00 | $496.40 | $1,527.59 | $0.00 | | $3,127.57 | $0.00 |
| 04/05/2024 | Custom Payment | 173 | 12/01/2020 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 04/08/2024 | Custom Payment | 173 | 01/01/2021 | $0.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | ($2,023.99) | $0.00 |
| 04/08/2024 | Custom Payment | 173 | 01/01/2021 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 04/26/2024 | Custom Payment | 173 | 02/01/2021 | $5,151.56 | $0.00 | $496.40 | $1,527.59 | $0.00 | | $3,127.57 | $0.00 |
| 04/26/2024 | Custom Payment | 173 | 02/01/2021 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 04/29/2024 | Custom Payment | 173 | 03/01/2021 | $0.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | ($2,023.99) | $0.00 |
| 04/29/2024 | Custom Payment | 173 | 03/01/2021 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 04/30/2024 | Custom Payment | 173 | 04/01/2021 | $0.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | ($2,023.99) | $0.00 |
| 04/30/2024 | Custom Payment | 173 | 04/01/2021 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 05/10/2024 | Custom Payment | 173 | 05/01/2021 | $0.00 | $0.00 | $0.00 | $201.54 | $0.00 | | ($201.54) | $0.00 |
| 05/30/2024 | Custom Payment | 173 | 05/01/2021 | $1,601.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $1,601.00 | $0.00 |
| 05/30/2024 | Custom Payment | 173 | 05/01/2021 | $3,550.56 | $0.00 | $0.00 | $0.00 | $0.00 | | $3,550.56 | $0.00 |
| 05/31/2024 | Custom Payment | 173 | 05/01/2021 | $0.00 | $0.00 | $496.40 | $1,527.59 | $0.00 | | ($2,023.99) | $0.00 |
| 05/31/2024 | Custom Payment | 173 | 05/01/2021 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 06/03/2024 | Custom Payment | 173 | 06/01/2021 | $0.00 | $0.00 | $496.40 | $1,577.59 | $0.00 | | ($2,073.99) | $0.00 |
| 06/03/2024 | Custom Payment | 173 | 06/01/2021 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/30/2024 | Custom Payment | 173 | 07/01/2021 | $5,151.56 | $0.00 | $496.40 | $1,577.59 | $0.00 | | $3,077.57 | $0.00 |
| 07/30/2024 | Custom Payment | 173 | 07/01/2021 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/31/2024 | Custom Payment | 173 | 08/01/2021 | $0.00 | $0.00 | $496.40 | $1,577.59 | $0.00 | | ($4,147.98) | $0.00 |
| 07/31/2024 | Custom Payment | 173 | 08/01/2021 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |
| 07/31/2024 | Custom Payment | 173 | 09/01/2021 | $0.00 | $0.00 | $496.40 | $1,577.59 | $0.00 | | $0.00 | $0.00 |
| 07/31/2024 | Custom Payment | 173 | 09/01/2021 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | | $0.00 | $0.00 |

SPS SELECT *Portfolio* SERVICING, inc.

Preparation Date:09/19/2024
Prepared By: SpoorthiKC

### Summary

| MFR Financial Information | | | |
|---|---|---|---|
| **Unpaid Principal Balance** | | | **$587,740.24** |
| | Principal Balance | $476,548.13 | |
| | Deferred Balance | $111,192.11 | |
| **Accrued Interest** | | | **$64,358.64** |
| | Interest Date | 09/19/2024 | |
| | Current Interest Rate | 5.12500% | |
| | Per Diem Rate | $58.64 | |
| **Escrow Advance Balance** | | | **$59,490.80** |
| | Taxes | $42,979.32 | |
| | Insurance | $16,511.48 | |
| | Mortgage Insurance | $0.00 | |
| | Escrow Refund/Disbursement | $0.00 | |
| **Advance Balance** | | | **$16,461.36** |
| | Valuations | $1,050.00 | |
| | Preservation | $0.00 | |
| | Inspections | $597.95 | |
| | FC Fees | $3,486.53 | |
| | FC Costs | $7,330.78 | |
| | BK Fees | $0.00 | |
| | BK Costs | $0.00 | |
| | Postage | $0.00 | |
| | Misc. | $3,996.10 | |
| Late Charges | | | **$446.76** |
| NSF Fees | | | **$20.00** |
| Fax Fees | | | **$0.00** |
| Payoff Fees | | | **$0.00** |
| Interest on Advance | | | **$0.00** |
| Misc. | | | **$0.00** |
| Unapplied Funds | | | **($166.34)** |
| **TOTAL** | | | **$728,351.46** |

**SPS** SELECT *Portfolio* SERVICING, inc.

Preparation Date:09/19/2024
Prepared By: SpoorthiKC

## Payment Change History

| From | To | Nos of Payment | P & I | T & I | Payment Amount | TOTAL |
|------|-----|----------------|-------|-------|----------------|-------|
| 05/01/2007 | 12/01/2013 | 80 | $3,494.79 | $2,398.72 | $5,893.51 | $471,480.80 |
| 01/01/2014 | 11/01/2015 | 23 | $1,985.62 | $2,398.72 | $4,384.34 | $100,839.82 |
| 12/01/2015 | 01/01/2017 | 14 | $2,816.80 | $2,398.72 | $5,215.52 | $73,017.28 |
| 02/01/2017 | 05/01/2019 | 28 | $496.40 | $2,398.72 | $2,895.12 | $81,063.36 |
| 06/01/2019 | 05/01/2020 | 12 | $496.40 | $1,443.17 | $1,939.57 | $23,274.84 |
| 06/01/2020 | 05/01/2021 | 12 | $496.40 | $1,527.59 | $2,023.99 | $24,287.88 |
| 06/01/2021 | 01/01/2022 | 8 | $496.40 | $1,577.59 | $2,073.99 | $16,591.92 |
| 02/01/2022 | 03/01/2022 | 2 | $3,758.23 | $1,577.59 | $5,335.82 | $10,671.64 |
| 04/01/2022 | 08/01/2022 | 5 | $3,758.23 | $1,365.59 | $5,123.82 | $25,619.10 |
| 09/01/2022 | 10/01/2023 | 14 | $3,758.23 | $1,392.25 | $5,150.48 | $72,106.72 |
| 11/01/2023 | 02/01/2024 | 4 | $3,758.23 | $1,865.63 | $5,623.86 | $22,495.44 |
| 03/01/2024 | 03/01/2037 | 157 | $3,758.23 | $1,393.33 | $5,151.56 | $808,794.92 |
| 04/01/2037 | | 0 | $0.00 | $1,393.33 | $1,393.33 | $0.00 |

# Bankruptcy Proof of Claim (BNKC/PMTS)

```
                        BNKRUPTCY PROOF OF CLM CH 13 INV SC8 09/18/24 15:14:36
KA LA           E 10/01/21  PMT   2,07  99  TYPE CONV  RES     ARM
4 DONNY BROOK WAY          COLLEGEVILLE PA 19426
--------------------------- PRE-PETITION CLAIM ----------------PRO SPS-----
CLAIMED        FILED       CONFIRMED      CLAIM TOT     CONFIRMED TOT   PRIN BALANCE
05 0  24                               187,14 99 *      187,14 99     587,740 24
REVISED CLAIM MONTH: MM/YY   PRE-PETITION CLAIM:  Y   CLM:              OVR:  Y
--------------- PAYMENTS -----------------  --------- LATE CHARGES ---------
DUE DATE - DUE DATE      AMOUNT       TOTAL   NUM    AMOUNT      TOTAL  PD-TO-DT
12 01 20   05 01 21    2,02  99   12,14  94     6     00          00
06-01-21 - 01-01-22    2,073.99   16,591.92     8     .00         .00
02-01-22 - 03-01-22    5,335.82   10,671.64     2     .00         .00
04-01-22 - 08-01-22    5,123.82   25,619.10     5     .00         .00
09 01 22   10 01 2     5,150 48   72,106 72    14     00          00
11-01-23 - 02-01-24    5,623.86   22,495.44     4     .00         .00




12 01 20   02 01 24              159,628 76     9                 00          00
1:SCROLL CLMS 2:ADD PYMT 3:FEES 5:ADD CLM 5:/11:PMT CLM 7,11,12 6:DELETE CLM
7:PREV PG 8:NEXT PG 9:BNKQ 10:PMT SCHD 12:PRT CLM 14:BNKP SCHD 15:POCI
```

## Bankruptcy Case Listing (BNKL)

```
                        BNK CASE LISTING        INV SC8  09/18/24  15:14:05
KA LA            E 10/01/21  PMT   2,07  99  TYPE CONV  RES      ARM      MAN B
4 DONNY BROOK WAY COLLEGEVILLE PA 19426                               GROUP
----------------------------------------------------------------PRO Q5L
                    DATE    CURR   DATE    REAS OTH L CONC  CLSD DATE
CASE NUMBER      CH  FILED   STAT  REMV    CD   LNS P CASE  BNK SRT NM
24-10595         13 02/23/24  A                    N
    F       KELVIN ALVIN LASHLEY                        KA LASHLEY
    N
    N
    N
22-12284         13 08/31/22  C    07/14/2                 MM/DD/YY
    F       KELVIN ALVIN LASHLEY                        KA LASHLEY
    N
    N
    N
22-10804         13 03/30/22  C    08/08/2                 MM/DD/YY
    F       KELVIN ALVIN LASHLEY                        KA LASHLEY
    N
    N
    N

*** MULTIPLE LOANS WITH SAME CASE NUMBER - SEE MAS1/COL2 ***
```

## Bankruptcy Plan Setup (BNKP/PAGE1)

```
                         BANKRUPTCY PLAN SETUP   CH 13 PRO SPS 09/18/24  15:14:29
KA LA            E 10/01/21                 TYPE CONV  RES      ARM
     4    DONNY BROOK WAY COLLEGEVILLE             PA 19426
-- Suspense Balances --------------------------------------------------------
 POST-PET DUE       TRUSTEE        DEBTOR   PP PAYMENT        POST-1        POST-2
   07/01/24           00             00       166  4            00            00
                    MSP SUSP        ---------------PLAN INFORMATION---------------
LEDGER: Y           166.34        PRE-PETITION  POST-PETITION 1  POST-PETITION 2
EXPECTED 1ST PLAN PMT DATE        06/01/24
         PLAN DUE DATE            06/01/24
            PLAN PAYMENT                .00            .00            .00
     PLAN PAYMENT FREQUENCY             12             00             00
NEXT LOAN DUE DATE IN PLAN        12/01/20
NEXT LOAN PAYMENT IN PLAN          2,02  99            00             00
     PAYMENTS INSIDE PLAN               N
            CONFIRMED *        187,143.99            .00            .00
          PAID-TO-DATE            201.54            .00            .00
        UNPAID BALANCE        186,942 45             00             00
   PAYMENT MORATORIUM
        MORATORIUM END
          PAID BTD/CTD                .00            .00            .00
    PAID YEAR TO DATE               00             00             00

   1:SCROLL FWD
```

## Payment Change Maintenance (PCH2/HPMT)

```
                       10/01/21   PAYMENT CHANGE MAINTENANCE   09/18/24 15:14:18
    KA LA         T PMT 05/01/07  INV SC8/002  TYPE CONV  RES      ARM      MAN B
    A  LASHLEY  CUR PMT 10/01/21  PB    476,548.13   IR  1.25000            GRP Q5L
    -- History of Payments ------------------------------------------------------
    PMT DT    11/01/23             03/01/24             04/01/37
      IR       5 12500             5 12500              UNAV
      P&I     3,758.23            3,758.23             ----UNAV----
    COUNTY       0.00                0.00                 0.00
      CITY     203.17              203.17               203.17
    HAZARD     10 08               10 08                10 08
        MI      0.00                0.00                 0.00
      LIEN    845.83              880.08               880.08
        OS    506.55                0.00                 0.00
      MISC     0 00                0 00                 0 00

       A&H      0.00                0.00                 0.00
      LIFE      0.00                0.00                 0.00
      REPL      0 00                0 00                 0 00
       HUD      0.00                0.00                 0.00
     2 P&I      0.00                0.00                 0.00
       NET  5,623.86            5,151.56
    PAYMNT
    CHANGE
    REASON
```

# EXHIBIT "G"

## Payoff Fees and Per Diem (PAY3)

```
                    AS-OF 09/19/24 PAYOFF FEES AND PERDIEM     09/18/24  15:14:47


------------------------------- ASSESS WAIVE --- ADDITIONAL 1ST MTG FEES ---
    FROM         RATE       AMOUNT     N   N 1        .00  RECORDING FEE
09/19/24    05.12500         58.64     N   N 2        .00  RELEASE PREP FEE
0 /01/ 7    00 00000                   N   N          00  PAYOFF STATEMENT FEE
                                       N   N 4        .00  S-FEE
----- 2ND MORT PERDIEM INTEREST ----- N   N 5        .00  FAX FEE
    FROM         RATE       AMOUNT     N   N 6        .00  INTEREST ON ADVANCE
09/19/24    00 00000           00


                                       N       446.76  ACCUM LATE CHARGES
                                       N        20.00  ACCUM NSF CHARGES
                                       N           00  OTHER FEES DUE
------------------------------- MEMO ITEMS ----------------2ND INV SC8 500
PAYMENT L/C    24.82       1ST TP 13 2ND TP 23 ST 37 CNTY 091    INV SC8 002
-------------------------* ADDITIONAL MESSAGES *--------- PF4:  FEE COMMENTS
ACTIVE CH 1  BANKRUPTCY         BNK FINAL DISPOSITION DATE OPEN
SUSPENDED FORECLOSURE           MULTIPLE LOANS PRESENT
PROC STOP = B  BANKRUPTCY       LOAN PAST DUE  36 MONTHS
961 DAYS PAST PROJECTED LEGAL DATE    ACTIVE STEP RATE LOAN
COMBINED 2ND MTG  ORIG AMT   111192, INT RATE   0 000%, PRIN BAL   111192 11
-----------------------------------------------------------------------------
```

## Payoff Calculation Totals (PAY4/PG1)

```
              AS-OF 09/19/24  PAYOFF CALCULATION TOTALS 09/18/24  15:14:53
NAME                  CONTACT NAME KELVIN ALVIN LASHLEY
------------------------------------------------------------------------------
PRINCIPAL BALANCE         587,740.24     ---- 1ST MORTGAGE RATE CHANGES ----
INTEREST 09/19/24          64,358.64     INT FROM     RATE       AMOUNT
PRO RATA MIP/PMI                  00     09/01/21   5 12500     64, 58 64
ESCROW ADVANCE             59,490.80     09/19/24
ESCROW BALANCE                   .00
SUSPENSE BALANCE             166.34-
HUD BALANCE                       00
REPLACEMENT RESERVE              .00
RESTRICTED ESCROW                .00
TOTAL-FEES                       .00
ACCUM LATE CHARGES           446 76
ACCUM NSF CHARGES             20.00
OTHER FEES DUE                   .00
PENALTY INTEREST                 .00
FLAT/OTHER PENALTY FEE            00     TOTAL 1ST MTG INTEREST  64, 58 64
CR LIFE/ORIG FEE RBATE           .00     TOTAL TO PAYOFF        728,351.46
RECOVERABLE BALANCE        16,461.36 NUMBER OF COPIES: 1   PRESS PF1 TO PRINT
                                         TOTAL PAGE 2                 .00

------------------------------------------------------------------------------
```

**EXHIBIT "H"**

Fill in this information to identify your case and this filing:

| | | | |
|---|---|---|---|
| Debtor 1 | **Kelvin** | **Alvin** | **Lashley** |
| | First Name | Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | **Eastern** | District of | **Pennsylvania** |
| Case number | **24-10595** | | |

☐ Check if this is an amended filing

Official Form 106A/B
# Schedule A/B: Property
12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:** Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

   ☐ No. Go to Part 2.
   ☑ Yes. Where is the property?

   1.1 **4 Donneybrook Ln**
   Street address, if available, or other description

   **Collegeville, PA 19426-4408**
   City          State          ZIP Code

   **Montgomery**
   County

   **What is the property?** Check all that apply.
   ☑ Single-family home
   ☐ Duplex or multi-unit building
   ☐ Condominium or cooperative
   ☐ Manufactured or mobile home
   ☐ Land
   ☐ Investment property
   ☐ Timeshare
   ☐ Other

   **Who has an interest in the property?** Check one.
   ☐ Debtor 1 only
   ☐ Debtor 2 only
   ☐ Debtor 1 and Debtor 2 only
   ☑ At least one of the debtors and another

   Other information you wish to add about this item, such as local property identification number:

   Source of Value: **Realtor.com ($828,740 less 20% closing costs)**

   Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

   | Current value of the entire property? | Current value of the portion you own? |
   |---|---|
   | **$662,992.00** | **$331,496.00** |

   Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

   **Tenants by the Entirety**

   ☐ **Check if this is community property** (see instructions)

   If you own or have more than one, list here: